IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on May 7, 2019

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | Grand Jury Original |
| | : | |
| ELEANOR R. MILLIGAN, | : | VIOLATIONS: |
| | : | |
| Defendant. | : | 18 U.S.C. § 1343 (Wire Fraud); |
| | : | 18 U.S.C. § 1028A (Aggravated Identity Theft); |
| | : | 22 D.C. Code §§ 3211, 3212(a), 3571.01 (First Degree Theft). |
| | : | |
| | : | FORFEITURE ALLEGATION: |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p). |
| | : | |
| | : | UNDER SEAL |

INDICTMENT

The Grand Jury charges that, at all times material to this indictment:

Introduction

1. Company A, including its previously wholly owned subsidiary, was a private company with employees in multiple States that provided information technology services to the federal government. From approximately 1998 through March 2016, Company A maintained its headquarters office in the District of Columbia, before relocating it to Greenbelt, Maryland.

2. Defendant ELEANOR R. MILLIGAN ("MILLIGAN") was an employee of Company A from on or about April 23, 1998, until on or about January 20, 2016, except for a few brief periods when she worked for another company and when she was laid off—all before 2009.

At all times relevant to this indictment, she worked as the payroll administrator in Company A's headquarters office.

3. As part of her duties as payroll administrator, MILLIGAN was solely responsible for the payroll administration for Company A, including, but not limited to:

   a. ensuring that employees' time and leave were entered into the payroll processing system;

   b. entering employees' direct deposit information into the payroll processing system;

   c. submitting payroll registers electronically to the payroll processing system;

   d. receiving confirmation that a payroll register was processed by the payroll processing system; and

   e. notifying the payroll processing system when an employee terminated his/her employment with Company A.

4. Company A contracted with a payroll processing company, Paychex, Inc. ("Paychex"), to process its payroll. The majority of Paychex's payroll processing functions were operated out of its headquarters location in and around Rochester, New York.

5. MILLIGAN initiated and conducted the vast majority of her duties regarding Company A's payroll online using Company A's computer and server located at its office headquarters in the District of Columbia.

6. Company A's employees were paid twice per month through the Paychex payroll system. In order to be paid, Company A's employees, directly or through a designated administrator, entered their time and leave into a "Time and Labor" application of the Paychex system for each pay period.

7. MILLIGAN was solely responsible for processing the payroll. To process each payroll, MILLIGAN accessed the Paychex payroll system online, ensured that employees' time and leave was properly entered, made any changes or corrections through another Paychex application called "Preview," and submitted the payroll register through that application to Paychex. Once Paychex's servers received a payroll register from MILLIGAN, Paychex processed the payroll register and caused payments, including wage and salary payments, to be made into Company A's employees' designated bank accounts.

8. Company B is a corporation that provides health care services at various locations in Maryland. Between on or about July 7, 2017, and May 17, 2019, MILLIGAN was employed as a payroll lead at Company B. As a payroll lead, MILLIGAN was responsible for processing payroll for at least one of Company B's Maryland offices. Although Company B did not use the Paychex payroll processing system, it used a similar payroll processing system to pay its employees.

## COUNTS ONE THROUGH EIGHT
### (Wire Fraud)

9. The factual allegations contained in Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated herein.

10. Beginning at least in or about August 2009, and continuing to in or about May 2019, in the District of Columbia and elsewhere, the defendant,

**ELEANOR R. MILLIGAN,**

devised and intended to devise a scheme to defraud her employers, Company A and Company B, to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and knowingly caused to be transmitted by means of wire

communications in interstate commerce certain writings, signs, signals, and sounds, for the purpose of executing such scheme.

### Purpose of the Scheme to Defraud

11. It was a purpose of the scheme to defraud for MILLIGAN to steal over $1,500,000 from her employers.

### Manner and Means

It was part of the scheme to defraud that:

12. MILLIGAN used her payroll position and access to payroll systems to direct payments from her employers to which she was not entitled into bank accounts and credit card accounts that she controlled or from which she benefited.

13. MILLIGAN disguised employer payments she directed to herself by making them appear to be for other employees by entering false direct deposit information for current and former employees, falsifying payroll registers, and fabricating requests for unused leave payments, among other tactics.

14. MILLIGAN hid her scheme by lying to her employers, fabricating documents and communications and disguising unauthorized payments as administrative mistakes.

15. MILLIGAN used bank accounts and credit card accounts to collect payments that she directed to herself from her employers without authorization.

16. MILLIGAN transmitted and caused to be transmitted by interstate wire communication false payroll registers from Company A to Paychex to cause Paychex to make unauthorized payments to MILLIGAN and for her benefit.

## Acts in Furtherance of the Scheme to Defraud

17. Between in or about August 2009 and in or about March 2016, MILLIGAN used identification information of over 70 Company A employees to submit numerous false payroll registers containing approximately 500 false requests for payments to Paychex, which caused over $1,500,000 in unauthorized deposits into MILLIGAN's bank account.

18. From in or about 2010 through in or about 2013, using the Paychex payment processing system, MILLIGAN caused approximately 38 unauthorized payments into her BOA account no. xxxx8601 (totaling approximately $251,345.60) using the identification information of Company A employee D.M., who stopped working for Company A in or about 2009.

19. In or about 2013, after Company A's Chief Financial Officer (CFO) questioned MILLIGAN about the payments to D.M., MILLIGAN:

    a. falsely claimed to the CFO that she had mistakenly failed to close D.M. in the Paychex system, resulting in an overpayment to D.M.;

    b. falsely claimed to the CFO that she had contacted D.M. to address the overpayment and that D.M. had agreed to return the money to Company A;

    c. created a fake residential address for D.M.;

    d. fabricated communications with D.M. addressing the alleged overpayments;

    e. provided a promissory note allegedly signed by D.M. agreeing to repay Company A for the alleged overpayments; and

    f. made payments to Company A that she falsely claimed were from D.M. to repay the alleged overpayments.

20. Between on or about February 14, 2014, and on or about September 8, 2015, MILLIGAN used the name of Company A's CFO to cause approximately $7,711.73 in unauthorized payments to be wired from Company A's bank account to a credit card account associated with MILLIGAN.

21. Between on or about July 7, 2017, and on or about May 17, 2019, MILLIGAN used without authority at least ten Company B employees' identification information and exploited Company B's payroll processing system to direct approximately $55,168.53 in payments to which she was not entitled into accounts she controlled or from which she benefited.

### Execution of the Scheme

22. On or about the dates set forth below, in the District of Columbia and elsewhere, MILLIGAN, for the purpose of executing the aforementioned scheme to defraud, did willfully cause to be transmitted by means of wire communication in interstate commerce from the District of Columbia, certain writings, signals, and sounds; that is—on or about the dates listed in the table below, MILLIGAN caused falsified Company A payroll registers purporting to direct payroll payments to Company A employees to be submitted electronically from Company A, in the District of Columbia, to Paychex outside of the District of Columbia:

| Count | Date | False Entry in Payroll Register |
|---|---|---|
| ONE | 01/15/2015 | $1,322.50 in the name of B.Y. |
| TWO | 02/13/2015 | $1,715.20 in the name of J.B. |
| THREE | 03/31/2015 | $1,665.23 in the name of J.D. |
| FOUR | 04/15/2015 | $1,850.25 in the name of J.M. |
| FIVE | 05/05//2015 | $1,690.40 in the name of L.N. |

| SIX | 07/31/2015 | $1,366.01 in the name of T.M. |
| SEVEN | 08/31/2015 | $1,178.36 in the name of J.B.(2) |
| EIGHT | 01/19/2016 | $2,805.34 in the name of M.K. |

**(Wire fraud, in violation of Title 18, United States Code, Section 1343).**

### COUNTS NINE THROUGH TWELVE
(Aggravated Identity Theft)

23.    The factual allegations contained in Paragraphs 1 through 8 and 11 through 22 of this Indictment are re-alleged and incorporated herein.

24.    On or about the dates listed below, within the District of Columbia and elsewhere, the defendant,

**ELEANOR R. MILLIGAN,**

did knowingly transfer, possess, and use the means of identification of another person, knowing that the person was a real person, without lawful authority during and in relation to the scheme to defraud charged in Counts One through Eight of this Indictment; that is—on or about the dates listed in the table below, MILLIGAN knowingly transferred, possessed, and used personal identifying information of an actual person, identified below by their initials, to defraud Company A of money and to commit wire fraud, in violation of 18 U.S.C. § 1343.

| Count | Date | False Entry in Payroll Register |
|---|---|---|
| NINE | 05/5/2015 | $1,015.65 in the name of B.Y. |
| TEN | 07/31/2015 | $1,361.52 in the name of J.B. |
| ELEVEN | 08/31/2015 | $1,115.63 in the name of L.N. |

| TWELVE | 02/12/2016 | $4,062.03 in the name of M.K. |

**(Aggravated Identity Theft, in violation of 18 United States Code, Section 1028A(a)(1), (c)(1))**

### COUNT THIRTEEN
### (First Degree Theft)

25. The factual allegations contained in Paragraphs 1 through 8 and 11 through 22 of this Indictment are re-alleged and incorporated herein.

26. Beginning at least in or about December 19, 2013, and continuing to in or about March, 2016, in the District of Columbia and elsewhere, the defendant,

**ELEANOR R. MILLIGAN,**

wrongfully obtained property of another, to wit, Company A, in a value exceeding $1,000, with the intent to deprive Company A of a right to the property and a benefit of the property and to appropriate the property to her own use.

**(Theft in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3211, 3212(a) 3212(a), 3571.01)**

### FORFEITURE ALLEGATION

27. Upon conviction of any of the offenses alleged in Counts One through Eight of this Indictment, the defendant shall forfeit to the United States any property, real or personal, constituting or derived from proceeds the defendant obtained as the result of these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of over $1,500,000.

28. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL

FOREPERSON

*Jessie K. Liu/jjk*
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA