## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 19-424 (TJK) |
| ELEANOR MILLIGAN, | |
| *Defendant.* | |

## <u>MEMORANDUM ORDER</u>

In July 2021, a jury found Eleanor Milligan guilty of eight counts of wire fraud, four counts of aggravated identity theft, and one count of first-degree theft. In October of that year, the Court sentenced her to 96 months imprisonment—which it later reduced to 83 months for reasons not at issue now—and three years of supervised release. The Court of Appeals affirmed her conviction and sentence. *United States v. Milligan*, 77 F.4th 1008, 1010 (D.C. Cir. 2023). Proceeding pro se for purposes of this motion, she now seeks to vacate or reduce her sentence under 28 U.S.C. § 2255, arguing that (1) the Court erred when it applied the "sophisticated means" enhancement under § 2B1.1(b)(10)(C) of the U.S. Sentencing Guidelines to her wire fraud convictions, and (2) her convictions for aggravated identity theft must be reversed because of *Dubin v. United States*, 599 U.S. 110 (2023), which was decided after her conviction and sentence. For the reasons explained below, the Court will deny the motion.[1]

---

[1] Milligan also filed a motion to reduce her sentence under 18 U.S.C. § 3582(c)(2) because of a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "zero-point offenders," for which she was represented by counsel. *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023). ECF Nos. 105, 106, 109. *See generally* Standing Order No. 24-03 (Nov. 1, 2023). Although her reply brief in support of the instant § 2255 motion to vacate, ECF No. 106 at 3–8, is docketed along with her § 3582(c)(2) motion to reduce sentence, ECF No. 106 at 1–2, the Court here resolves only the former motion. The Court has already granted the latter motion and reduced her sentence to 83 months. ECF No. 111.

I.      **Factual Background**

The Court of Appeals summarized the relevant evidence at trial as follows:

From 2009 to 2016, Milligan worked as a payroll specialist and then as the human resources benefits administrator for Global Management Systems, Inc. (GMSI), a firm that provides technological services such as web development and telecommunications to federal government agencies.  Milligan was responsible for maintaining and submitting payroll information to a third-party company that paid GMSI employees their salary.  The third-party company directly deposited paychecks into employees' bank accounts or mailed them physical checks.

During her employment, Milligan implemented a scheme whereby she accessed GMSI's payroll system and altered the information of employees who had recently left the company.  Rather than removing the former employees' information from the system and shutting off their pay when they departed, as she was supposed to do, Milligan left their information in the system as if they remained on the payroll. GMSI's third-party vendor thus continued to issue paychecks to the departed employees.  But Milligan altered the former employees' bank account information so that their continued paychecks would be deposited into an account she owned.

Milligan took several steps to conceal her embezzlement.  In 2011, the Internal Revenue Service contacted a former GMSI employee, David Morgan, and informed him that he had failed to submit a W-2 for wages he earned from the company that year.  Morgan in fact had stopped working for GMSI by 2010, but Milligan retained his information in the payroll system and redirected his continuing paychecks into the bank account she controlled.  After the IRS reached out to Morgan, he contacted Milligan to inquire about why the IRS believed he was still getting paid by GMSI. Milligan responded by sending Morgan a corrected W-2 that showed he had not worked for GMSI in 2011.  The IRS contacted Morgan again in 2012 for the same issue, prompting Morgan again to contact Milligan, which led Milligan to send him another corrected W-2 for 2012.

Milligan's efforts to conceal her scheme did not stop there.  When her supervisor discovered that GMSI continued to pay Morgan after he had left the company, Milligan told her supervisor that she made a mistake and forgot to stop the paychecks from issuing.  Milligan later showed her supervisor a message she received from the email address DavidMorgan647@Ymail.com.  The message, ostensibly from Morgan, stated that Milligan had brought the erroneous payments to Morgan's attention and that he agreed to pay the money back to GMSI.  The "DavidMorgan647" account subsequently exchanged a series of emails with Milligan and Milligan's supervisor to discuss the logistics of repayment.  In reality, all of the messages from "DavidMorgan647," as well as the account itself, had been created by Milligan without Morgan's knowledge.

Milligan later delivered checks, which she claimed she had received from Morgan as repayment, to her supervisor. Those checks bore the address of a supposed entity entitled "David Morgan Rental Properties." But those checks, like the email messages from "DavidMorgan647," came from Milligan without Morgan's knowledge. What is more, the business "David Morgan Rental Properties" existed in name only—Milligan had obtained a mailbox from a UPS store in that name.

*Milligan*, 77 F.4th at 1010–11.

## II.    Legal Standard

A motion under § 2255 allows federal prisoners to collaterally attack an otherwise final sentence if the sentence was (1) "imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose [the] sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof and must demonstrate his right to relief by a preponderance of the evidence. *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973); *United States v. Ashton*, 961 F. Supp. 2d 7, 11 (D.D.C. 2013). "Relief under § 2255 is an extraordinary remedy in light of society's legitimate interest in the finality of judgments." *United States v. Moore*, 75 F. Supp. 3d 568, 571 (D.D.C. 2014). Accordingly, it is typically only granted if "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citation omitted).

Thus, a motion to vacate under § 2255 is "neither a second chance at appeal nor is it a substitute for direct appeal." *Ashton*, 961 F. Supp. 2d at 11. That is, a defendant "cannot raise collaterally any issue litigated and adjudicated on direct review, absent exceptional circumstances." *Moore*, 75 F. Supp. 3d at 572; *see also Ashton*, 961 F. Supp. 2d at 11. Similarly,

once "a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice'" or "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Cause for default exists where "some 'objective factor external to the defense' impeded efforts to raise an issue in trial or on direct appeal." *Moore*, 75 F. Supp. 3d at 572 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  And to show "actual prejudice," a petitioner must show that errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (emphasis and citation omitted); *see id.* ("Although the required showing has not been precisely delineated, it is clear that [petitioner] must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" (quotation marks and citations omitted)).  Alternatively, even if a defendant cannot show "cause" and "actual prejudice," she can still pursue a § 2255 claim by demonstrating her actual innocence.

## III.  Analysis

### A.  Milligan's Challenge to the "Sophisticated Means" Enhancement Is Procedurally Barred Because She Failed to Raise It on Direct Review

Milligan challenges the Court's application of the "sophisticated means" sentencing enhancement to her wire fraud convictions.  That enhancement applies if an offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C).  It also applies to "conduct pertaining to the execution *or concealment of an offense*." U.S.S.G. § 2B1.1 cmt. n.9(B) (emphasis added).  In particular, Milligan argues that the Court erroneously relied on "unrelated, uncharged details from 404B evidence" to determine that the enhancement applied, and she contends that the Government

otherwise "presented no evidence that any of the eight counts [of wire fraud] were concealed in any way, sophisticated or otherwise," that would justify the enhancement.  ECF No. 100 at 4; ECF No. 106 at 4.  Milligan's claims are procedurally barred because she failed to raise them on direct appeal.

Milligan objected to the application of this enhancement at sentencing, arguing that her conduct at issue was not sophisticated enough to qualify for the enhancement.  At that time, in applying the enhancement, the Court noted the "sophisticated, concrete steps that the defendant took to conceal what she had done," including "setting up an email account in someone else's name; authoring . . . communications that were purportedly from [Morgan] from that email account; and then setting up a UPS mailbox in that person's name falsely."  Sent'g Hr'g Tr. at 13:8–14.  Milligan also challenged the enhancement's application on direct appeal for the same reasons, and the Court of Appeals upheld it.  *Milligan*, 77 F.4th at 1013–16.  That court reasoned that Milligan "did not just set up an email address or a mailbox.  Rather, she took those actions as part of an overall scheme to impersonate Morgan so as to enable concealing her offense from GMSI," and so the application of the enhancement was appropriate.  *Id.* at 1014.

As explained above, Milligan cannot rehash the same argument challenging the "sophisticated means" enhancement that she made on appeal.  So she now changes tack slightly, arguing that the Court erroneously considered "404B evidence" to apply the enhancement, and that her conduct did not conceal her offenses.  The merits of those arguments aside, Milligan is barred from raising them now, because she did not pursue them on direct appeal.[2]  There is no

---

[2] As for the merits, the evidence at issue was not admitted under Federal Rule of Evidence 404(b), and even if it had been, that rule says nothing about what the Court may consider at sentencing.  *United States v. Levya*, 916 F.3d 14, 27 (D.C. Cir. 2019).  Moreover, both this Court

reason that she could not have made these arguments then, and she offers none other than a conclusory representation that "the [Court's] errors were not discovered until after my appeal." ECF No. 100 at 5; *see also* ECF No. 106 at 3. Nor has she made any claim of actual innocence related to her convictions for wire fraud. *See* ECF No. 106 at 5–6. Thus, Milligan's challenge to the Court's application of the "sophisticated means" enhancement is procedurally barred.[3]

### B.   Milligan's Convictions for Aggravated Identity Theft Survive *Dubin*

Next, Milligan challenges her conviction for aggravated identity theft based on the Supreme Court's decision in *Dubin*, which was decided after she was convicted and sentenced.[4] In that case, the Court was called upon to interpret the aggravated identity theft statute, which provides for a mandatory two-year minimum sentence for anyone who, in the course of committing certain felonies—including wire fraud—"knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The defendant in *Dubin* submitted claims for Medicaid reimbursement that overstated the qualifications of the

---

and the D.C. Circuit described in detail how Milligan's conduct related to the concealment of her wire fraud offenses.

[3] Milligan also argues in passing that this enhancement's application somehow rendered her sentence "substantively unreasonable" under 18 U.S.C. § 3553. ECF No. 106 at 4. That issue has already been considered and rejected on appeal, and Milligan has not shown exceptional circumstances to re-litigate it on collateral review. *Milligan*, 77 F.4th at 1016.

[4] The Government does not contest that *Dubin* applies retroactively. *See Welch v. United States*, 578 U.S. 120, 128 (2016) ("[N]ew *substantive* rules generally apply retroactively." (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)). And a "rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 129 (quoting *Schriro*, 542 U.S. at 353). "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* (quoting *Schriro*, 542 U.S. at 351–52).

person who had performed the relevant testing, thereby inflating the amount of reimbursement received by his company.  599 U.S. at 113.  The defendant argued that even though those claims happened to include patients' Medicaid reimbursement numbers, he had not "use[d]" another person's identification "in relation to" the fraud for purposes of § 1028A(a)(1).  *Id.* at 132.  The Court agreed, and narrowed the application of the statute by holding that "§ 1028A(a)(1) is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature."  *Id.* at 114.[5]

Accordingly, Milligan argues in effect that she is actually innocent of aggravated identity theft, as least as refined by *Dubin*.[6]  But her conduct easily meets the standard set forth there.  Her use of another's means of identification *was* at the crux of what made her conduct unlawful: she used former GMSI employees' information to divert funds to accounts she controlled.  Unlike in *Dubin*, she did not merely submit fraudulent claims about "how" or "when" a service was performed.  *See* 599 U.S. at 114, 132.  Rather, she misrepresented the "who."  Thus, her conduct is analogous to that which the Supreme Court recognized would meet its narrowed definition of aggravated identity theft: "the pharmacist who swipes information from the pharmacy's files and

---

[5] Before *Dubin*, the D.C. Circuit had taken a more expansive view of § 1028A(a)(1).  The Circuit defined the phrase to "use[] . . . without lawful authority" as "encompass[ing] situations in which a defendant gains access to identity information legitimately but then uses it illegitimately," with no additional requirement that such use be at the "crux" of what makes the underlying offense criminal.  *United States v. Reynolds*, 710 F.3d 434 (D.C. Cir. 2013).  Thus, at Milligan's trial, the jury was instructed that to find her guilty of aggravated identity theft it must find the "unauthorized . . . use of the means of identification facilitated or played a role in the offense"— not necessarily that it was at the "crux" of what makes the underlying offense criminal.  ECF No. 60 at 22–23.

[6] Whether Milligan's argument is considered as one asserting her actual innocence or that she was prejudiced because she could not raise a *Dubin* claim on appeal, it fails for substantially the same reasons.

uses it to open a bank account in a patient's name." *Id.* at 118.  In that example, the Court explained, the "misuse of th[e] means of identification would be integral to what made the conduct fraudulent, because misrepresentation about who was involved was at the crux of the fraud." *Id.* (internal quotation marks and citation omitted).  So too here.

Milligan makes little attempt to argue otherwise.  She asserts only that because she used employee identification numbers, rather than names, the use of another person's "means of identification" was too attenuated to the underlying wire fraud to be at the "crux" of it.  ECF No. 106 at 5–6.  According to Milligan, there was no verification process in place to ensure the direct deposit information belonged to the relevant employee.  *Id.*  Instead, each employee had a unique identification number that she submitted along with her own bank information.  *Id.*  This argument gets Milligan nowhere.  That she used numbers rather than names is beside the point, because the numbers could still be used to identify the employee GMSI intended to pay.  *See* 21 U.S.C. § 1028(d)(7) (defining "means of identification" as "any name or number" used "alone or in conjunction with any other information" to identify a specific individual).  And that distinction does not come close to making her use of that identification "ancillary" to the crime.  *See Dubin*, 599 U.S. at 132.

\* \* \*

For these reasons, Milligan has not met her burden of showing that she is entitled to relief under 28 U.S.C. § 2255.  Moreover, "[a] judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *See United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255).  That is the case here.

**IV.     Conclusion & Order**

For all the above reasons, it is hereby **ORDERED** that Milligan's Motion to Vacate, ECF

No. 100, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 10, 2024